UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA MARTIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-01220-SRC |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**Memorandum and Order**

Petitioner Barbara Martin asks the Court to vacate her sentence under 28 U.S.C. § 2255. Docs. 1, 11.  Martin makes two primary arguments for the Court to grant her petition:  first, that counsel and the Court failed to properly determine the amount of restitution owed; and second, that she received constitutionally ineffective assistance of counsel.  But the record in this case forecloses both of those arguments.  Accordingly, the Court holds that Martin is not entitled to relief or an evidentiary hearing under § 2255, and accordingly denies her petition.

**I.      Statement of facts**

Martin's guilty plea agreement describes the following facts:

Defendant Barbara Martin ("Defendant Martin") is a resident of St. Charles, Missouri, which is in the Eastern District of Missouri.  At all times relevant to the Indictment, Defendant Martin was the administrator of Legacy Consumer Directed Services ("Legacy"), a business that provided personal care services, including consumer directed services ("CDS"), that were funded by the Missouri Medicaid Program.

Fraudulent Enrollment of Legacy Consumer Directed Services In Missouri Medicaid

In or about December of 2013, Defendant Martin submitted an application to enroll Legacy in the Missouri Medicaid program as a CDS provider in the St. Louis area, in the Eastern District of Missouri.  Defendant Martin agreed with her co-conspirators and co-defendants Margo Taylor ("Defendant Taylor") and Zamika

Walls ("Defendant Walls") to sign the application using the name of Defendant Walls and to list Defendant Walls as Legacy's director. The purpose of Defendant Martin's voluntary and intentional agreement with Defendant Taylor and Defendant Walls was to obtain money and property from the Missouri Medicaid program by means of materially false and fraudulent representations both as to the true identities of Legacy's management staff and as to the provision of services not actually rendered by Legacy. At all times relevant to the Indictment, Defendant Walls resided in Atlanta, Georgia and did not participate in Legacy's daily operations. On the enrollment application to which Defendant Martin signed Defendant Walls' name, Defendant Martin falsely checked "no" in response to the question asking whether the applying provider had been convicted of a crime.

Though Defendant Martin and Defendant Taylor ran Legacy's day-to-day operations, neither were listed on Legacy's Missouri Medicaid enrollment application as managing employees, because Defendant Martin and Defendant Taylor did not meet the enrollment criteria to participate in the Missouri Medicaid program. Had Defendant Martin disclosed her name and/or the name of Defendant Taylor on the enrollment application, Legacy would not have been approved to participate in the Missouri Medicaid program.

As a result of Defendant Martin's submission of an enrollment application reflecting material misrepresentations as to the true identities of Legacy's management, Legacy was enrolled in the Missouri Medicaid program and billed the program approximately $2,508,694.19 for CDS services between in or about May of 2014 and September of 2020.

<u>Billing Missouri Medicaid for CDS Services Not Provided</u>

Between in or about June of 2015 and October of 2019, Defendant Martin and her co-conspirators Defendant Taylor and Defendant Walls attended various Missouri Medicaid training programs covering topics including, among other things, use of an electronic visit verification ("EVV") system to verify personal care attendants' work. Defendant Martin knew that personal care attendants were supposed to clock-in and clock-out using a toll-free number from the client's home phone in order to document that services Legacy billed to Missouri Medicaid were provided.

Between in or about May of 2014 and September of 2020, Defendant Martin, through Legacy, submitted or caused to be submitted claims for reimbursement for CDS services to Missouri Medicaid that she knew were not provided, for which Legacy did not have requiring [sic] supporting documentation, and/or for which she knew that Defendant Taylor had altered EVV documentation. For example, Defendant Martin submitted claims for CDS services purportedly provided by Defendant Walls and N.M. in the Eastern District of Missouri on dates when Defendant Martin, Defendant Walls, and N.M. were together in other locations outside of the Eastern District of Missouri, such as Las Vegas, Nevada,

2

Miami, Florida, and Atlanta, Georgia. Defendant Martin also knew that Defendant Walls and N.M. were residing in Atlanta, Georgia, and thus were not providing CDS services to Missouri Medicaid beneficiaries in the Eastern District of Missouri.

Funds fraudulently paid by Missouri Medicaid to into [sic] Legacy's bank accounts later were transferred to the personal bank accounts of Defendant Martin, Defendant Taylor and Defendant Walls.

Fraudulent Legacy PPP Loan

On or about April 6, 2020, Defendant Martin voluntarily and intentionally agreed with Defendant Walls that Defendant Martin would submit a Paycheck Protection Program ("PPP") Loan Application on behalf of Legacy to Bank of America, which was signed with the name of Defendant Walls, for the purpose of obtaining a loan by means of materially false and fraudulent representations. Bank of America is a participating lender in the PPP program and is a financial institution within the meaning of Title 18, United States Code, Section 20, the deposits of which are insured by the Federal Deposit Insurance Corporation.

The PPP program was created under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which was enacted in March 2020 to provide emergency financial assistance to millions of Americans suffering the economic impact caused by the COVID-19 pandemic. When an authorized representative of a qualifying business fills out a PPP loan application, he or she must acknowledge the program rules and make various certifications. After PPP loan applications are completed, they are processed by participating lenders. Participating lenders fund PPP loans with their own monies, which are guaranteed by the Small Business Administration ("SBA").

The PPP loan application that Defendant Martin submitted to Bank of America on behalf of Legacy contained the following materially false and fraudulent representation: "the funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; as specified under Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud." In support of the PPP loan application, Defendant Martin submitted payroll records containing false information, such as hours that Defendant Walls purportedly worked for Legacy when, in reality, Defendant Walls was living and working in Atlanta, Georgia during the time periods listed on the records and had provided no compensable services on behalf of Legacy. Defendant Martin knew that these representations on the PPP loan application were false, and she made the representations intending to receive PPP loan funds to which she knew she was not entitled.

Had Bank of America known of Defendant Martin's misrepresentations on the PPP loan application, it would not have issued PPP Loan Number 6449397700 to Legacy in the amount of $58,295. The funds were deposited on or about May 5, 2020 into Legacy's Bank of America checking account **** **** 9658, to which Defendant Martin and Defendant Walls were signatories. After transferring the PPP loan funds and other CARES Act loan proceeds into a Legacy savings account, Defendant Martin withdrew $90,000 (which included the PPP loan proceeds) from the Legacy savings account on or about August 7, 2020. Defendant Martin then caused one cashier's check in the amount of $50,000 to be prepared for Defendant Walls, and one cashier's check in the amount of $40,000 to be prepared for Defendant Martin.

On or about October 30,[ ]2020, after Legacy had ceased operations, Defendant Martin and Defendant Walls agreed to submit a fraudulent application for forgiveness of Legacy's PPP loan to Bank of America. Defendant Martin listed Defendant Walls as a contact on the application and signed the application with the name "Legacy Consumer Directed Service." The application for loan forgiveness contained a number of false certifications, including that the loan proceeds were used to pay costs eligible for forgiveness, that Legacy had verified the payments for which it was requesting forgiveness, and that "the information in this application and the information provided in all supporting documents and forms is true and correct in all material respects." Defendant Martin also certified that "I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges."

As a result of this fraudulent application submitted by Defendant Martin, Bank of America informed Legacy that SBA had approved loan forgiveness of the $58,295 loan in or about February of 2021.

*United States v. Martin,* Case No. 4:21-cr-00351-SRC-1, doc. 125 at §4.

## II.     Procedural history

### A.     Criminal proceedings

In June 2021, a federal grand jury returned a nine-count indictment against Martin, charging her with one count of conspiracy to commit health-care fraud, in violation of 18 U.S.C. § 1349; seven counts of health-care fraud, in violation of 18 U.S.C. §§ 2, 1347; and one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349. Doc. 1.[1] One year later,

---

[1] The "Doc." numbers used in the "Criminal proceedings" sub-section only are from *United States v. Martin*, Case No. 4:21-cr-00351-SRC-1.

4

Martin pleaded guilty to two counts—one of conspiracy to commit health-care fraud and one of conspiracy to commit bank fraud—in exchange for the dismissal of the seven counts of health-care fraud. Doc. 125. She admitted to knowingly violating 18 U.S.C. § 1349, admitted that there was a factual basis for her plea as to that count, and confirmed that she fully understood the elements of her crime—namely:

1. That in or before December of 2013, two or more people reached an agreement to commit the crime of health-care fraud;
2. That she voluntarily and intentionally joined the agreement, either at the time it was first reached or at some later time while it was still in effect; and
3. That at the time she joined in the agreement, she knew the purpose thereof.

Doc. 125 at 2–3.[2] She also admitted to knowingly violating 18 U.S.C. § 1349 on different grounds, admitted that there was a factual basis for her plea as to that count, and confirmed that she fully understood the elements of that crime—namely:

1. That in or before April of 2020, two or more people reached an agreement to commit the crime of bank fraud;
2. That she voluntarily and intentionally joined the agreement, either at the time it was first reached or at some later time while it was still in effect; and
3. That at the time she joined in the agreement, she knew the purpose of the agreement.

*Id.* at 3.

Martin also agreed to "waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether

---

[2] The Court cites to page numbers as assigned by CM/ECF.

5

defendant's conduct falls within the scope of the statute(s)." *Id.* at 10; *see* doc. 212, Plea Tr. at 26:22–27:2. Further, she agreed to "waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." Doc. 125 at 11; *see* doc. 212, Plea Tr. at 27:24–28:4.

The United States Probation Officer prepared a Presentence Investigation Report (PSR). Doc. 178. The PSR calculated Martin's total offense level as 24 and her total criminal history category as II. *Id.* at ¶¶ 51, 66. Based upon that total offense level and criminal history categorization, the imprisonment range that the federal guidelines provided was 57 months to 71 months. *See id.* at ¶ 98.

In June 2022, the Court held a plea hearing in which Martin pleaded guilty to conspiracy to commit health-care fraud and conspiracy to commit bank fraud. Doc. 124; doc. 212, Plea Tr. at 35:1–13. Martin confirmed that she understood the elements of her crimes and that she did, in fact, do everything set forth in those elements:

> **THE COURT:** So section 3 of the plea agreement sets forth the elements of the offenses you are pleading guilty to. The elements are those things that the United States must prove beyond a reasonable doubt before you could be convicted or found guilty. Do you understand that?
>
> **[MARTIN]:** Yes, Your Honor.
>
> **THE COURT:** All right. So the elements as to Count 1 are as follows:
>
> On or before December of 2013, two or more persons conspired and combined to commit the crime of healthcare fraud.
>
> Number two, you voluntarily and intentionally joined in that agreement either at the time it was first reached or at some later time while it was still in effect.

6

|  |  |
|---|---|
|  | Three, at the time you joined in the agreement, you knew the purpose of the agreement. |
|  | Do you understand all of those things? |
| **[MARTIN]:** | Yes, Your Honor. |
| **THE COURT:** | And did you, in fact, do all of those things? |
| **[MARTIN]:** | Yes, Your Honor. |
| **THE COURT:** | As to Count 9, the elements are as follows: |
|  | One, in or before April of 2020, two or more people reached an agreement to commit the crime of bank fraud; |
|  | Two, you voluntarily and intentionally joined in the agreement either at the time it was first reached or at some later time while it was still in effect; |
|  | And, three, at the time you joined in the agreement, you knew the purpose of the agreement. |
|  | Do you understand all of those things? |
| **[MARTIN]:** | Yes, Your Honor. |
| **THE COURT:** | And did you, in fact, do all of those things? |
| **[MARTIN]:** | Yes, Your Honor. |
|  | . . . |
| **THE COURT:** | So before I ask you how you wish to plead, do you need to speak with your attorney? |
| **[MARTIN]:** | No, Your Honor. |
| **THE COURT:** | How do you wish to plead to the charges in Count 1 and 9 of the indictment in this case? |
| **[MARTIN]:** | Guilty, Your Honor. |

*Id.*, Plea Tr. at 18:9–19:18; 34:23–35:3.  The Court confirmed and found that she was competent to plead guilty:

| | |
|---|---|
| **THE COURT:** | Have you understood all of the questions that I've asked you and answered them truthfully and completely? |
| **[MARTIN]:** | Yes, Your Honor. |
| | . . . |
| **THE COURT:** | Are you pleading guilty because you are, in fact, guilty as charged? |
| **[MARTIN]:** | Yes, Your Honor. |
| | . . . |
| **THE COURT:** | The Court finds in the case of the United States of America v. Barbary Martin, that Ms. Martin is fully competent and capable of entering informed pleas; that she is aware of the nature of the charges and the consequences of her pleas; that her pleas of guilty are knowing and voluntary pleas made willingly and intelligently . . . . I accept your pleas of guilty, and I find you guilty as charged on Counts 1 and 9. |

*Id.*, Plea Tr. at 35:4–36:21. Further, the Court confirmed that Martin was entirely satisfied with the services rendered her by defense counsel:

| | |
|---|---|
| **THE COURT:** | Ms. Martin, about how long have you known [defense counsel] Mr. Whitener and Mr. Rogers? |
| **[MARTIN]:** | Since the beginning of my case. June. I'm not sure. |
| **THE COURT:** | Going back to 2021, mid-2021; does that sound right? |
| **[MARTIN]:** | Yes, Your Honor. |
| **THE COURT:** | Okay. Your indictment was filed on June 2 of 2021, so it would have been sometime after that. Is that what you are telling me? |
| **[MARTIN]:** | Yes, Your Honor. |
| **THE COURT:** | And have any other attorneys helped you in any way in connection with this case? |
| **[MARTIN]:** | No, they have not, Your Honor. |

8

| | |
|---|---|
| THE COURT: | Has—[h]ave Mr. Whitener and Mr. Rogers conducted themselves in a way that causes you to have any complaint against them for anything they've done, anything you believe they have failed to do or any other reason at all? |
| [MARTIN]: | No, Your Honor. |
| THE COURT: | Are you fully satisfied with the services that Mr. Whitener and Mr. Rogers have provided you in this case? |
| [MARTIN]: | Yes, I am, Your Honor. |
| THE COURT: | I'm going to talk with you now about waiving pretrial motions and trial rights. So do you understand that by pleading guilty, you're giving up the right to file pretrial motions, including motions to suppress evidence or any statements that you may have made? |
| [MARTIN]: | Yes, Your Honor. |
| THE COURT: | Did you discuss that decision with your attorneys? |
| [MARTIN]: | Yes, I have, Your Honor. |
| THE COURT: | And are you fully satisfied with the decision you and your attorneys have made about waiving pretrial motions in this case? |
| [MARTIN]: | Yes, I am, Your Honor. |
| | . . . |
| THE COURT: | Do you understand that you are waiving rights to have the United States provide to you what is called *Brady* materials or exculpatory evidence? |
| [MARTIN]: | Yes, Your Honor. |
| | . . . |
| THE COURT: | Before you signed this plea agreement, did you have the opportunity to read the entire document, review it with your attorneys, have them answer any questions you had about it and discuss any possible defenses you have to this case? |
| [MARTIN]: | Yes, I do, Your Honor. |

| | | |
|---|---|---|
| **THE COURT:** | | And did you have that opportunity before today? |
| **[MARTIN]:** | | Yes, Your Honor. |

*Id.*, Plea Tr. at 8:7–10:6; 13:8–16.

In September 2022, the Court held a sentencing hearing at which it sentenced Martin to a within-the-guidelines-range sentence of 57 months of imprisonment followed by a five-year term of supervised release. Doc. 214, Sent. Tr. at 37:23–38:9; 39:13–16. It also ordered Martin to pay restitution in the amount of $2,566,989.19. *Id.*, Sent. Tr. at 39:21–41:12. Before imposing its sentence, the Court confirmed that Martin remained satisfied with the services rendered her by defense counsel:

| | |
|---|---|
| **THE COURT:** | You pled guilty because you are guilty as charged on the counts to which you pled; is that correct? |
| **[MARTIN]:** | Yes, Your Honor. |
| **THE COURT:** | And when you pled guilty, you told me that you were fully satisfied with the services your counsel had provided for you in this case. Since then, have you had enough time to talk with your counsel and consult with them on any matters about this case? |
| **[MARTIN]:** | Yes, I have, Your Honor. |
| **THE COURT:** | Do you remain fully satisfied with the services that Mr. Rogers and Mr. Whitener have provided for you in this case? |
| **[MARTIN]:** | Yes, Your Honor. |

*Id.*, Sent. Tr. at 3:9–21.

10

After sentencing, Martin filed a notice of appeal but then moved to voluntarily dismiss the appeal before filing a brief.  *See* docs. 223, 225, 227.  She is currently serving her sentence at FCI Greenville in Illinois with a projected release date of December 22, 2024.[3]

**B.     Civil proceedings**

On September 27, 2023, Martin timely filed a motion to vacate her sentence pursuant to 28 U.S.C. § 2255.  Doc. 1.  First, her petition argues that defense counsel should have insisted that the United States provide a more specific loss calculation than to merely rely on a range as provided within the United States Sentencing Guidelines.  *See id.* at ¶¶ 4, 6–7; U.S.S.G. § 2B1.1(b)(1) (providing for offense level increases depending on the range in which a defendant's loss calculation falls).  Second, she argues that although she retained a named partner at a law firm, her proceedings "were handled by a less seasoned attorney."  Doc. 1 at ¶ 8.  Third, she argues that "the concept of pretrial motions had never been explained to her."  *Id.* at ¶ 9.  Fourth, she argues that defense counsel did not advise her to review "exculpatory evidence . . . of services rendered for the [M]edicare payments she received."  *Id.* at ¶ 10–11.  Fifth, she claims that defense counsel did not "thoroughly explain[]" that "[a]ll of the charges against [her] have plausible defenses."  *Id.* at ¶ 13.

The United States responded to the petition by arguing that the record conclusively demonstrates that Martin is entitled to no relief, and that Martin fails to satisfy the two-pronged *Strickland* analysis for ineffective-assistance-of-counsel claims.  *See* doc. 8.  Martin replied by insisting that she would be able to prove her claims once the Court allows her an evidentiary hearing.  Doc. 11.

---

[3] *See* Find an inmate, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited April 30, 2024).

### III. Standard

#### A. Habeas review

Under section 2255, a federal prisoner "may move the court which imposed [his] sentence to vacate, set aside or correct the sentence" on the grounds that the court imposed "the sentence . . . in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If a petitioner claims his sentence violates the Constitution or laws of the United States, the petitioner must establish that the violation constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (first quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989); and then citing Fed. R. Crim. P. 32(d) advisory committee notes to the 1983 amendments). Generally, to obtain section 2255 relief based on a claim, a petitioner must have raised the underlying error on direct appeal. *See Roundtree v. United States*, 885 F.3d 1095, 1097 (8th Cir. 2018). If a petitioner failed to do so, the Court considers the claim procedurally defaulted, rendering it ineffective in establishing a right to section 2255 relief. *See id.*

Three exceptions to this general rule exist. First, "if the error is jurisdictional, the error may be raised on collateral review without being subjected to procedural default analysis." *United States v. Mooring*, 287 F.3d 725, 727 (8th Cir. 2002). Second, if a petitioner raises a constitutional claim, the Court does not consider the claim procedurally defaulted if the petitioner shows cause for the default and actual prejudice. *See Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994); *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992). This "cause and prejudice exception does not apply to nonconstitutional or nonjurisdictional claims

12

that could have been but were not raised on direct appeal." *Anderson*, 25 F.3d at 706 (first citing *Brennan v. United States*, 867 F.2d 111, 120 (2d Cir. 1989); and then citing *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988)). Finally, the Court "will consider a claimed error that could have been raised at trial or on direct appeal if the alleged error was a fundamental miscarriage of justice." *Id.* (citing *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam)). This exception, however, "applies only when a petitioner shows by clear and convincing evidence that, but for an alleged constitutional error, no reasonable juror would have found the petitioner guilty," *id.* at 706–07 (citing *Wallace v. Lockhart*, 12 F.3d 823, 827 (8th Cir. 1994)), and extends only to claims of factual innocence, *id.* at 707 (first citing *Narcisse v. Dahm*, 9 F.3d 38, 40 (8th Cir. 1993); and then citing *Ramey*, 8 F.3d at 1314).

If the petitioner's claims are not procedurally barred, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994). A petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the petitioner] to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). However, a court may dismiss a claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043 (citing *Larson v. United States*, 905 F.2d 218, 220–21 (8th Cir. 1990)).

### B.     Ineffective assistance of counsel

A petitioner may raise an ineffective-assistance-of-counsel claim for the first time in a § 2255 motion, even if he could have raised the same claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). This exception exists to prevent petitioners from being forced

13

"to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.* Additionally, a petitioner's attorney may serve as counsel for both trial and appellate proceedings, and it is unlikely that the attorney would raise a claim of his own ineffective assistance on appeal. *See United States v. Rashad*, 331 F.3d 908, 911 (D.C. Cir. 2003).

To succeed on an ineffective-assistance-of-counsel claim, a movant must show both that counsel's performance was deficient and that the deficient performance prejudiced the movant's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001). A movant "faces a heavy burden" to establish ineffective assistance of counsel under § 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88; *Sera*, 267 F.3d at 874. Two substantial impediments exist to making such a showing. First, the law applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689). Second, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* (quoting *Strickland*, 466 U.S. at 690).

**IV.    Discussion**

As an initial matter, the Court notes that Martin's petition makes not a single citation to the record or to caselaw, and her reply brief cites only enough caselaw to state the *Strickland* standard for the first time. *See* docs. 1, 11. But the Eighth Circuit has noted that "a petition which consists only of 'conclusory allegations unsupported by specifics . . .' is insufficient to overcome the barrier to an evidentiary hearing on a section 2255 motion." *Voytik v. United*

14

*States*, 778 F.2d 1306, 1308 (8th Cir. 1985) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73 (1977)). On that standard, Martin's petition falls well short of demonstrating that she is entitled to relief. Even if she had conducted a fulsome analysis of her claims, however, each alleged defect fails to clear the bar for relief under § 2255.

First, Martin argues that defense counsel should have "insist[ed] that the United States have a precise figure" of Martin's financial fraud for sentencing purposes, that "loss calculations under sect. 2 (B) (1.) [sic] require[] that the state have the exact loss calculation for purposes of sentencing," and that "[t]he failure to provide this sum acted as a prejudice" against Martin. Doc. 1 at ¶ 4. But that claim is inconsistent with the very provision Martin cites. Section 2B1.1 of the United States Sentencing Guidelines assigns increases in offense level depending on the range in which the financial loss caused by a given crime falls. *See* U.S.S.G. § 2B1.1(b)(1). The offense level, in other words, turns not on the precise loss figure, but rather on the range into which the loss figure falls. The Guidelines provide, in relevant part, for a 16-point increase in offense level for a financial loss amounting to over $1,500,000, and an 18-point increase for a loss amounting to over $3,500,000. *Id.* Here, both Martin and the United States agreed that Martin's crime "resulted in a loss of greater than $1,500,000, but not greater than $3,500,000." *United States v. Martin*, Case No. 4:21-cr-00351-SRC-1, doc. 125 at 9. For sentencing purposes, that much suffices.

And to the extent that Martin brings an ineffective assistance of counsel claim on this point, Martin fails to show that defense counsel's alleged failure yielded any prejudice against her. *See Strickland*, 466 U.S. at 687 (explaining that a successful ineffective-assistance claim requires showing not only the deficiency of defense counsel's conduct but also actual prejudice to the defendant). In this context, prejudice—i.e., the suffering of a different outcome—would

15

only obtain if a more precise loss figure would have landed below the very range to which Martin agreed in her plea agreement. *United States v. Martin*, Case No. 4:21-cr-00351-SRC-1, doc. 125 at 9. But Martin makes no showing that a more accurate loss calculation would have yielded a figure at or below $1,500,000. *See* doc. 1. Consequently, her conclusory assertion that defense counsel's alleged deficient conduct "acted as a prejudice," *id.* at ¶ 4, does not suffice to carry her "heavy burden" of establishing ineffective assistance of counsel under § 2255, *DeRoo*, 223 F.3d at 925.

Second, Martin claims that "[w]hen asked if she was satisfied with the services of her counsel," she "lacked the ability to give an honest response" because "possible defenses to the charges had not been . . . explored." Doc. 1 at ¶ 5. She similarly claims that the charges "have plausible defenses that should have been thoroughly explained to her." *Id.* at ¶ 13. But again, those allegations fall well short of *Strickland*'s two-pronged hurdle to relief. Martin does not explain what defenses, exactly, competent counsel would have raised in this case. Nor does she explain how the outcome of the proceedings would have differed if counsel had raised those unidentified defenses. Further, the record belies her claim: at her change-of-plea hearing, the Court asked Martin whether she "discuss[ed] any possible defenses" with her defense counsel before signing the plea agreement, to which she responded that she had. *See supra* pp. 9–10. Accordingly, Martin's conclusory allegations of deficient performance and prejudice fail to establish ineffective assistance under § 2255.

Third, Martin claims that "[t]he [C]ourt should have insisted on an evidence[-]based restitution amount that actually reflected the amounts that were allegedly ill-gained." Doc. 1 at ¶ 6. "[B]ecause . . . Martin had indeed rendered services to the patients for the fees that were paid," a more accurate loss calculation, she insists, "would have resulted as [sic] mitigation." *Id.*

16

at ¶¶ 6–7.  But the Eighth Circuit has explained that "[b]ecause a dispute about restitution does not involve a claim of a right to be released from custody, a prisoner cannot challenge the restitution portion of his sentence under § 2255." *Dyab v. United States*, 855 F.3d 919, 922 (8th Cir. 2017) (citations omitted).  That binding precedent forecloses Martin's argument that the Court should vacate the restitution imposed at sentencing.

Fourth, Martin argues that "[e]ven though [she] retained a named partner at [a] law firm, [her] proceedings were handled by a less seasoned attorney."  Doc. 1 at ¶ 8.  She also claims that "the concept of pretrial motions had never been explained to her."  *Id.* at ¶ 9.  But the record in this case belies her claim of dissatisfaction with defense counsel.  At her change-of-plea hearing, the Court asked Martin whether she had "any complaint against" defense counsel for "any . . . reason at all."  *See supra* at p. 9.  "No, Your Honor," she replied.  *See id.*  "Are you fully satisfied with the services that [defense counsel] have provided you in this case?"  *See id.*  "Yes," she affirmed again.  *See id.*  The Court then specifically asked Martin about pretrial motions.  "[D]o you understand," it asked, "that by pleading guilty, you're giving up the right to file pretrial motions?"  *See id*.  "Yes, Your Honor," she replied.  *See id.*  "Did you discuss that decision with your attorneys?"  *See id.*  "Yes, I have," she confirmed.  *See id.*  Once more, the Court asked, "are you fully satisfied with the decision you and your attorneys have made about waiving pretrial motions in this case?"  *See id.*  "Yes, I am, Your Honor," she again confirmed.  *See id.*

That record conclusively demonstrates the opposite of Martin's claims:  not only did she approve of counsel's efforts (whether "less seasoned" or not), she also expressly represented to the Court that she had discussed pretrial motions with defense counsel and agreed with counsel's decision to waive those motions.  Accordingly, "the files and records of the case conclusively

17

show that [Martin] is entitled to no relief." § 2255(b). Further, and in any event, Martin fails to demonstrate how her "less seasoned" defense counsel prejudiced her, or what pretrial motions she would have filed if they had been explained to her, leaving her well short of meeting the prejudice prong of *Strickland*'s ineffective-assistance standard.

Finally, Martin argues that she was "not . . . shown or given any [*Brady*] material that could have led to a meritorious defense." Doc. 1 at ¶ 10. "Any competent counsel," she claims, "would have advised that she review any and all exculpatory evidence." *Id.* at ¶ 11. But the record conclusively shows that Martin knowingly waived her right to see such evidence. At her change-of-plea hearing, the Court asked her, "Do you understand that you are waiving rights to have the United States provide to you what is called *Brady* materials or exculpatory evidence?" *See supra* at p. 9. "Yes, Your Honor," Martin unequivocally replied. *Id.* Further, Martin does not explain how she suffered prejudice by defense counsel's alleged failure to advise her to review exculpatory evidence. Accordingly, Martin fails to succeed in showing a *Brady* violation or making an ineffective-assistance claim.

For all these reasons, the Court denies Martin's motion and request for an evidentiary hearing.

## V.     Certificate of appealability

For the Court to issue a certificate of appealability, Martin must make a substantial showing that she suffered the denial of a constitutional right. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). A substantial showing is one indicating that reasonable jurists could debate the issues, a court could resolve the issues differently, or the issues deserve further proceedings. *Id.* But as described in the discussion above, Martin has not made such a showing. Accordingly,

the Court declines to issue a certificate of appealability in this case.

**VI.     Conclusion**

The Court finds that the record conclusively establishes that Martin is not entitled to relief.  Accordingly, the Court denies Martin's [1] Motion to vacate her sentence under 28 U.S.C. § 2255.  Doc. 1.  Further, the Court declines to issue a certificate of appealability.  A separate order of dismissal accompanies this memorandum and order.

So ordered this 30th day of April 2024.

　　　　　　　　　　　　　　　　　　　　_SL R. CL_____
　　　　　　　　　　　　　　　　　　　　STEPHEN R. CLARK
　　　　　　　　　　　　　　　　　　　　CHIEF UNITED STATES DISTRICT JUDGE